■ STATE OF NEW YORK, Appellant, v WILLETS POINT CONTRACTING CORPORATION et al., Respondents.—Kane, J. P. Appeals (1) from an order of the Supreme Court at Special Term (Williams, J.), entered April 26, 1985 in Albany County, which granted defendants' motion and cross motion for summary judgment dismissing the complaint and cross claims, and (2) from an order of said court, entered April 15, 1986 in Albany County, which, *inter alia,* granted defendant Pittston Petroleum, Inc.'s renewed motion for summary judgment dismissing the complaint against it.

In the fall of 1979, the United States Coast Guard advised the State that petroleum was being discharged into Jamaica Bay. The oil flow was traced back to Consolidated Edison's underground utility vault on College Point Boulevard in Queens. Consolidated Edison employees were pumping petroleum which had seeped into its utility vaults into the street.

From there, the oil was running into a catch basin and out into the Bay. A determination was made that the groundwater in the vicinity of these vaults was contaminated with oil.

The vaults were located on the east side of the property of defendant Willets Point Contracting Corporation (Willets Point) on College Point Boulevard. The Willets Point facility has two oil storage tanks on its premises: a 10,000-gallon tank and a 1,500-gallon tank. The State installed a series of observation wells around the vaults. A mass of No. 2 oil was discovered in front of the Willets Point facility. However, no oil was found below the street, which runs north-south, or across the street from the Willets Point facility. The State then expanded the perimeter of the wells, working upgradient on the boulevard past Butts Automotive Collision and Towing and a U-Haul Company facility, which have never held No. 2 fuel, to the property of the defendant Pittston Petroleum, Inc. (Pittston). All the new wells were free of oil except those which were installed at the top of the hill adjacent to Pittston's property. Both the oil plume located at the Willets Point facility and the plume adjacent to Pittston's property consisted of No. 2 fuel oil. Russell Graichen, the State's regional oil spill engineer, together with a contractor which he hired, concluded, however, that there were two separate plumes of fuel oil since they were unable to locate any connecting stream between the two plumes.

Willets Point pressure tested its storage tanks and such tests indicated that its tanks were not leaking. Pittston, which stores and sells No. 2 oil, is uphill and south of Willets Point. Its storage capacity for petroleum is approximately 2,949,000 gallons. In response to the discovery of the oil plumes, Pittston drilled 20 observation wells around its storage tanks. These wells were free of oil.

The State installed recovery wells, two in the vicinity of the Willets Point facility and two in the vicinity of the Pittston facility. As of the end of 1984, 10,000 gallons had been recovered at the Willets Point facility, with the pumping still ongoing, and 22,000 gallons had been recovered at the Pittston facility, where the pumping had stopped. Over $353,557 has been spent by the State to investigate and clean up the oil at the Willets Point and Pittston sites. Costs continued to accrue because oil was still being recovered at the Willets Point facility.

In June 1983, the State commenced the instant action, seeking to recover from defendants the cost of its investigation and recovery. Pittston and Willets Point answered, denying

the State's substantive allegations, and asserted cross claims against one another. After conducting various studies and conducting a lengthy examination before trial of Graichen, defendants both moved for summary judgment. Special Term, by order entered April 26, 1985, granted defendants' motions. The State then moved for reargument; this motion was granted with respect to its decision concerning Pittston. Upon reargument, Special Term denied Pittston's motion for summary judgment dismissing the complaint. Pittston then moved for reargument. Special Term granted this motion for reargument and granted Pittston's motion for summary judgment. These appeals by the State ensued.

Initially, the State contends that summary judgment is premature because it did not have an opportunity to complete discovery. In our opinion, the State has forfeited its right to oppose summary judgment based on a lack of discovery by its failure to conduct discovery in all of the years of investigation (see, Lerner Stores Corp. v Parklane Hosiery Co., 54 AD2d 1072, 1073; see also, Guarino v Mohawk Containers Co., 59 NY2d 753).

The State commenced this lawsuit in June 1983. In the substantial period of time prior to the motions for summary judgment, it apparently took no steps to seek discovery. Further, in opposing the motions, the State failed to state what information it desired or to outline the purpose of such information. Even when Pittston made its motion for reargument returnable in 40 days, expressly to permit discovery, the State failed to avail itself of this opportunity. Accordingly, we now turn to a consideration of the merits of the summary judgment motions.

The State contends that Special Term erred in granting summary judgment to Pittston because the State's evidence in opposition to the motion created a triable issue of fact. On the other hand, Pittston asserts that the State's evidence is merely a series of conclusions and allegations without factual foundation and, as such, does not raise a question of fact. We agree with Pittston.

The State failed to raise a triable issue of fact because its case is founded solely on the speculative opinion of its experts (see, Zuckerman v City of New York, 49 NY2d 557, 562; Dabney v Ayre, 87 AD2d 957). For example, Handex Corporation, hired by the State, informed its client in a written report that it could not give any opinion as to the source of the oil. Its employee, J. George Longworth, in an affidavit submitted

in opposition to the summary judgment motion, was only able to state that "I contend that Pittston is a *possible* source" (emphasis supplied) of the contamination at issue. The opinion offered by the State's other expert, Graichen, was also based on pure speculation. In fact, during the course of this motion, the State conceded that the "evidence establishes that no discharge came from the tanks".

The State's attempt to use Graichen's opinion as sufficient to avoid summary judgment, because the oil may have come from sources other than the tanks located on Pittston's property, is no more substantial because it too is pure speculation. The undisputed evidence indicates that Pittston's above-ground facilities were inspected on a regular basis and no fault was ever found that could account for the spill. Further, Pittston's inventory records did not reveal any sudden loss of oil. Moreover, Graichen himself stated that, had there been a surface spill of such proportion from Pittston's above-ground facilities, the State would have been aware of it. The State also asserted that a 1961 spill may have caused the present trouble. Upon reargument, the 1961 fire department records were clarified and it was established that the prior spill could not have caused the accumulation at issue.

Turning to the Willets Point's motion, we find that Special Term properly granted summary judgment. Again, the State has failed to raise triable issues of fact.

First, the State's own experts failed to offer any proof to rebut Willets Point's evidence that their tanks did not leak. Graichen stated in his deposition that as of February 27, 1980, it was his opinion that the oil was not coming from Willets Point. He further admitted that, between the date of February 27, 1980 and the date of his deposition, January 27, 1984, he acquired no knowledge of any leaks in any fuel tank on the Willets Point property.* The Handex Corporation, the consul-

---

* The following colloquy occurred at the Graichen examination before trial:

"Q. Is it accurate you had no knowledge or information as of February 27, 1980 that there existed any leaks in the fuel oil storage tanks at the Willets Point facility? * * *

"A. Correct.

"Q. Is it equally accurate that between the date of February 27, 1980 and this very moment, you have no knowledge of the existence of any leaks in any fuel oil tank on the Willets Point property?

"A. Correct.

"(Discussion off the record)

"Q. Is the knowledge that you have just testified to me as broad as or

tant engaged by the State, rendered a report on July 15, 1981 in which it expressly stated that it could not give an opinion as to the source of the spill or spills. In fact, the most a Handex representative was willing to say in opposition to Willets Point's motion for summary judgment was that "Willets Point should be considered as a possible source for the oil leak" and "I contend that Willets Point is a possible source of the subsurface accumulation of oil found adjacent to their property".

Unlike the State, Willets Point did produce evidence to support its position. First, it had a specialist perform a pressure test of its two oil tanks, which concluded that there were no leaks. The State asserts that the only recognized test for oil tanks is the Kent-Moore test which was not used. The State has not performed the Kent-Moore test. It is merely asserting that the results from such a test would be more efficient and might support its position. Such pure speculation does not preclude the granting of summary judgment. In addition, Willets Point established, uncontrovertedly, that it switched from oil to gas in December 1981. It is also uncontroverted that oil was still being pumped from the wells around the Willets Point facility some three years after the conversion. The State's own expert, Graichen, opined that this continued flow was "fresh" oil.

In sum, the State's case rested upon the fact that oil was found near defendants' oil storage facilities. However, the State was unable, through drilling of observation wells or study and observation by experts, to provide any evidence tracing the subject plumes of oil to defendants' facilities. The mere fact that the plumes exist in proximity to the facilities in question is not enough to overcome the motions for summary judgment and, since the State presented no further evidence, defendants' motions were properly granted.

Orders affirmed, with costs. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.

---

coincident with the knowledge relied on by the State of New York in this lawsuit?

