■ MICHAEL CLIFFORD et al., Respondents, v BLACK CLAWSON COMPANY, Appellant, et al., Defendant. (And a Third-Party Action.)—Mercure, J. Appeal from an order of the Supreme Court (Dier, J.), entered March 14, 1988 in Washington County, which denied defendant Black Clawson Company's motion for summary judgment dismissing the complaint against it.

Plaintiff Michael Clifford (hereinafter plaintiff) sustained

the injuries giving rise to this products liability action when his hand and arm came in contact with moving parts of a DR-15 duplex rewinder, manufactured by defendant Black Clawson Company (hereinafter defendant) and used by plaintiff's employer, Hollingsworth & Vose Company, in the manufacture of paper. Following exchange of pleadings, service of bills of particulars and considerable discovery, defendant moved for summary judgment dismissing the complaint against it. Supreme Court denied the motion and defendant appeals.

Paper, in the process of its manufacture, is initially wound around a shaft into a large roll. The function of a rewinder is to unwind the paper from that shaft, slice it into appropriate lengths with knife-like blades called slitters and rewind the separate ribbons of paper onto hollow cardboard tubes, called cores, all in one operation. At the time of plaintiff's injury, the DR-15 duplex rewinder was being used to unwind a 63-inch-wide spool of wall covering and to slice an inch to an inch and a half of unusable "trim" from each side. The resulting 60 inches of finished product was wound onto a 60-inch cardboard tube inserted onto the front shaft of the winder. The trim was being wound onto separate 1½- to 2-inch cardboard tubes inserted immediately to the left and right of the 60-inch tube on the same front shaft. At the time of the accident, the forming rolls were nearly 30 inches in diameter.[1] One of the trim rolls became unstable, collapsed and fell away from the still-forming 60-inch roll and onto plaintiff's hand, winding it around the empty, unused portion of the shaft that extended beyond the winding roll of wall covering.

In support of its motion for summary judgment, defendant submitted an affidavit of its engineer, Carl B. Plato, depositions of plaintiff, Plato, and Martin Myers, a representative of Hollingsworth & Vose, and further documentary evidence which demonstrated that the DR-15 rewinder was equipped with trim guides or deflectors, original equipment designed to deflect trim away from the core shaft and onto the floor as it was cut. An additional device was present on the machine at the time of the accident, neither manufactured nor installed by defendant, consisting of pneumatic ducts which, through suction, drew trim away from the slitters and onto the floor. Neither of these devices were in use at the time of the accident. The evidence also showed that Hollingsworth & Vose had replaced the machine's original core shaft assembly.

---

1. Plaintiff's testimony at a deposition that the roll was approximately 60 inches in diameter at the time of the accident was contradicted by his supervisor and appears to be incorrect, although not purposely so.

Clearly, the evidence submitted on the motion was sufficient, if not contradicted, to eliminate any material factual issues as to defendant's liability *(see, Winegrad v New York Univ. Med. Center,* 64 NY2d 851, 853). It indicated that the cause of the accident was one or more of the following: the failure of Hollingsworth & Vose to utilize the trim deflectors supplied with the rewinder; the winding of trim in a manner which was not intended for this machine; the replacement of the thrust bearing core shaft supplied with the machine with a pneumatic shaft; and the failure to cover the entire length of the core shaft with cores. None of these causes could be attributed to defendant. The manufacturer of a product cannot be held liable for personal injury in theories of either negligence or strict products liability if, after the product leaves the possession and control of the manufacturer, there are substantial modifications which proximately cause the plaintiff's injuries *(Sage v Fairchild-Swearingen Corp.,* 70 NY2d 579; *Robinson v Reed-Prentice Div.,* 49 NY2d 471, 473; *McGavin v Herrick & Cowell Co.,* 118 AD2d 982). The burden thus shifted to plaintiffs to come forward with evidentiary proof in admissible form sufficient to require a trial *(see, Zuckerman v City of New York,* 49 NY2d 557, 562; *see also, Bradt v John Hancock Mut. Life Ins. Co.,* 98 AD2d 886; *Metropolitan Bank v Hall,* 52 AD2d 1084).

In opposition to the motion, plaintiffs submitted the affidavit of their expert, Harry Eiermann, a professional safety and loss control consultant. It was Eiermann's opinion that the rewinder was defectively designed and that defendant's failure to guard an exposed in-running nip[2] proximately caused plaintiff's injuries. However, the admissible evidence in the record does not support the contention that plaintiff came in contact with an exposed nip point and, in fact, would indicate to the contrary *(see, State of New York v Willets Point Contr. Corp.,* 125 AD2d 742). In a letter dated January 5, 1988, submitted in opposition to the motion, Eiermann wrote to plaintiffs' attorney that plaintiff had stated that "as his arm was wrapped around the exposed shaft, his hand did move and was drawn into the in-running nip point resulting in the injury to his hand". The letter is not sworn to and is, thus, inadmissible. Further, its references to plaintiff's statements are inadmissible hearsay, insufficient to defeat defendant's motion for sum-

---

2. A nip is the line of contact between parallel revolving drums or rollers. The nip is "in-running" on one side, where the direction of revolution of the rollers would draw an object in between them, and "out-running" on the other side.

mary judgment *(see, Gonyea v Folger,* 133 AD2d 964). More significantly, plaintiff's own affidavit in opposition to the motion, sworn to at approximately the same time, makes no such statement.

Examination of a diagram of the DR-15 duplex rewinder shows the only nip to be between the roll of winding paper and a drum situate behind and slightly to the rear of it, toward the interior portion of the machine and away from the operator. Plaintiff's own testimony was that after his hand was caught in the trim, the paper kept winding around his hand and the shaft, enmeshing him further and further, up to his elbow. When the machine stopped, his hand was right in his face, in his mouth. He further testified: "Because I did try to pull my arm away from it, so it might have pulled away from the roll, you know, more towards the end of the shaft, and maybe that is the only reason my hand really didn't go between the roll and the bed roll. That's the only thing I can think of, and I lay there at night thinking about that."

Finally, the contention that the machine should have been equipped with a trim guide to deflect the trim away from the shaft is belied by the record. The uncontroverted evidence was that the rewinder was equipped with such a guide, which had been removed to permit winding of the trim on cores on the shaft *(see, Magee v Bliss Co.,* 120 AD2d 926). In the absence of admissible evidence to support plaintiffs' theory of liability, the motion should have been granted.

Order reversed, on the law, with costs, motion granted, summary judgment awarded to defendant Black Clawson Company and complaint against it dismissed. Kane, J. P., Weiss, Mikoll, Levine and Mercure, JJ., concur.